IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CHAOS HOLDINGS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. CV-01-B-0695-NE |
| ) | |
| JAPAN OPTICAL, U.S.A., INC., ) | |
| KENNY OGAWA, and ) | |
| SUMIO YUKIMURA, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Currently before the court is defendants' motion to dismiss for lack of personal jurisdiction over each defendant, insufficiency of process, insufficiency of service of process, and failure to state a claim upon which relief can be granted.[1] (Def.'s Mot.) *See* FED. R. CIV. P. 12(b)(2), (4), (5), (6). Upon consideration of the record, the submissions of parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' motion is due to be granted because the court lacks personal jurisdiction over each defendant.

Plaintiff Chaos Holdings, Inc. ("Chaos"), a Delaware corporation with places of business in several states, commenced this action by filing a diversity action in this court against defendants Japan Optical, U.S.A., Inc. ("Japan Optical"), Kenny Ogawa, and Sumio Yukimura for breach of contract, breach of express and implied warranties, fraud, and misrepresentation. (Compl.) Defendants' motion to dismiss asserts that the court lacks personal jurisdiction over the defendants.

---

[1] The parties have not briefed and the court does not reach defendants' contention that plaintiff's complaint states no claim upon which relief may be granted.

## I. STANDARD OF REVIEW

In the context of a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the movant, non-resident defendant." *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A prima facie case is established if the plaintiff presents evidence sufficient to defeat a motion for judgment as a matter of law. *Id.* The court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.* Where evidence presented by the parties conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

## II. STATEMENT OF FACTS

Japan Optical is a corporation incorporated under the laws of the State of California with its principal place of business in Gardena, California. (Compl. ¶ 2.) It is engaged in the business of manufacturing eyeglass products, including sunglasses. (*Id.*) Japan Optical has no office in the State of Alabama, has no customers residing in the State of Alabama, and does no business in the State of Alabama. (Yukimura Aff. ¶ 2; Ogawa Aff. ¶ 2.) None of its officers or management employees have ever been in Alabama, nor does it retain persons who make personal visits to the state for the purpose of soliciting business. (*Id.*) Yukimura is an individual resident of the State of California and President of Japan Optical. (Compl. ¶¶ 3-4, 8, 51; Yukimura Aff. ¶ 2.) Ogawa is an individual resident of the State of California and Vice President of Japan Optical. (Compl. ¶¶ 3-4, 8, 51; Ogawa Aff. ¶ 2.) Neither Yukimura nor Ogawa has ever been to Alabama or conducted any business in the state. (Yukimura Aff. ¶ 3; Ogawa Aff. ¶ 3.)

In September 1999 Mary Swan Lewis, President of Chaos, contacted Japan Optical to discuss the possibility of Japan Optical manufacturing a line of sunglasses that Chaos intended to market.[2] (Compl. ¶ 7; Lewis Aff. ¶¶ 2, 4.) Through its agents Ogawa and Yukimura, Japan Optical made representations about the sunglasses and its performance of strict quality control tests on products it manufactured. (Compl. ¶ 8.) In October 1999 Chaos placed an order with Japan Optical for 50,000 pair of hinged, folding frame sunglasses. (Compl. ¶ 10.) Japan Optical promised and agreed to deliver the sunglasses to Chaos no later than December 1999. (Compl. ¶ 11.) There is no evidence that any discussion or negotiation between Chaos and Japan Optical took place outside of California.

Japan Optical failed to deliver the sunglasses in December 1999. (Compl. ¶ 14.)[3] When delivery was made on February 4, 2000, the sunglasses were defective. (Compl. ¶ 15.) Upon return of the defective sunglasses, Japan Optical agreed to replace them with defect-free sunglasses and to deliver the replacement sunglasses by April 2000. (Compl. ¶ 18.)

However, Japan Optical did not complete delivery of the replacement sunglasses in April 2000, but delivered them over a four-month period up to July 2000. (Compl. ¶ 19.) The replacement sunglasses were also defective. (Compl. ¶ 20.) Japan Optical acknowledged responsibility for the defects and told Chaos that it would send a technician to fix the sunglasses. (Compl. ¶ 23.) However, Japan Optical decided not to send a technician. (*Id.*) When Chaos

---

[2] According to Yukimura and Ogawa, Lewis approached Japan Optical as early as May 1999. (Yukimura Aff. ¶ 4; Ogawa Aff. ¶ 4.)

[3] As noted above, the court must construe the allegations in the complaint as true to the extent they are uncontroverted by defendants' affidavits or deposition testimony. *See Morris v. SSE, Inc.*, 843 F.2d at 492.

told Japan Optical that it must receive delivery of satisfactory sunglasses by February 1, 2001, Japan Optical informed Chaos that it could not manufacture defect-free sunglasses by that date. (Compl. ¶ 24.)

The parties disagree about when Japan Optical became aware that Chaos had any connection with Alabama or that the sunglasses were to be shipped to Alabama. Sims testified that Chaos's principle place of business is now in Alabama, and has been in Alabama since Walter Sims, Chief Executive Officer of Chaos, opened an office in his home in April 1999. (Sims Aff. ¶¶ 2, 6.) Chaos operates two offices in Alabama, one in Sims's home and one at SCL Warehouse, Inc. ("SCL") in Madison, Alabama. (*Id.*) Chaos has contracted with SCL to provide most non-marketing and non-sales functions, including logistic areas of warehousing, inventory control, shipping and invoicing, customs clearance, and customer service. (Sims Aff. ¶ 4.)

Lewis testified that

> [i]t was never contemplated by me or anyone else from Chaos at the time the sales order was executed that the sunglasses ordered from Japan Optical would be shipped to my residence at 3200 Pacific Avenue, Manhattan Beach, California 90266. It was clear in our negotiations with Japan Optical that one-hundred thousand (78,500) [sic] pair of sunglasses would not be shipped to my home address in California, but that they would be shipped to Chaos somewhere in Alabama.

(Lewis Aff. ¶ 5.) Sims testified that a purchase order from Chaos to Japan Optical listed Chaos's shipment address as 9310 Madison Blvd., # 9, Madison, AL 35758. (Sims. Aff. ¶ 7, and Ex. 1.) A January 13, 2000, sales order for stickers from Japan Optical to Chaos lists Chaos's Madison, Alabama address as the shipping address. (Sims 2d Supp. Aff. ¶ 4, and Ex. 1.) Sims also testified that Japan Optical delivered the first shipment of defective sunglasses to Chaos at the

4

SCL warehouse in Madison, Alabama, and that a shipment of other sunglasses from Japan Optical was made to Chaos at the SCL warehouse in Madison, Alabama. (Sims. Aff. ¶¶ 10, 12.) After Chaos received the defective sunglasses in February 2000, Ogawa, Yukimura and other Japan Optical employees represented to employees and agents of Chaos in Alabama that the defective sunglasses would be fixed and, when it was determined that they could not be fixed, that they would be replaced with non-defective sunglasses. (Sims Aff. ¶ 13; Summerford Aff. ¶ 4.) Sims testified that a number of the phone calls were initiated by Japan Optical employees to Sims and others in Alabama. (*Id.*) In a letter dated April 13, 2000, addressed to Sims in Athens, Alabama, Ogawa guaranteed that replacement sunglasses "will be sent to SCL warehouse around April 27, 2000. Then 7,500 pair to be sent to SCL warehouse around May 7, 2000. The remaining 36,776 replacement pair of Origami sunglasses will be sent to SCL warehouse in Madison Alabama around June 7, 2000." (Sims Supp. Aff. ¶ 2, and Ex. 1.) Finally in an April 13, 2000, letter addressed to Chaos at the SCL Warehouse in Madison, Alabama, Darren Tuerle, a Japan Optical employee, asked Summerford to release the defective sunglasses to NNR freight forwarders, an agent for Japan Optical. (Sims Supp. Aff. ¶ 3, and Ex. 2.)

Defendants contend that throughout the negotiation and contracting in 1999 they believed that Chaos was a California operation, and only after the sunglasses had been manufactured some three months later did Chaos express an intention to forward the sunglasses to an Alabama warehouse. (Yukimura Aff. ¶ 8; Ogawa Aff. ¶ 8.) The business card Mary Swan Lewis presented to Japan Optical bears Chaos's name and lists the address as 3200 Pacific Avenue, Manhattan Beach, California 90266. (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def.'s Brief"), Ex. B.) In a "Statement and Designation by a Foreign Corporation"

5

filed with the Secretary of State of the State of California on December 9, 1999, Walter Sims, Chaos's CEO, stated that the address of Chaos's principal executive office is 3200 Pacific, Manhattan Beach, CA 90266. (Def's Brief, Ex. A.)

The October 8, 1999, Japan Optical sales order for the sunglasses Chaos ordered lists Chaos's address and shipping address as 3200 Pacific Ave, Manhattan Beach, CA 90266. (Def's Brief, Ex. C.) The sales order states that delivery is to be made by December 20, 1999, "F.O.B. Gardena," and is signed for Chaos by Walter Sims. (*Id.*) None of Chaos's six checks tendered to Japan Optical as payment in this matter identify an Alabama address. (*See* Defendants' Reply Memorandum ("Def's Reply"), Ex. 7.) Three checks list Chaos's Manhattan Beach, California, address; three list a post office box in Castleberry, Florida. (*See id.*) A memorandum from Mary Lewis to Walter Sims dated November 20, 1999, evidences Chaos's intent beginning October 1, 1999, to sublease space on West Walnut, Gardena, California, from Japan Optical. (Def.'s Reply, Ex. 8.) The memorandum evidences concern about the fact that the showroom was not yet completed, and expresses hope that the warehouse section is completed, and suggests that the warehouse section in California would house the sunglasses at issue until they were sold to department stores. (*See id.*) On December 21, 1999, Ogawa sent an email to Sims and Lewis in which he describes the delivery of 21 pallets to Chaos at 123 West Walnut Street, Gardena, California. (Def's Reply, Ex. 9.) Ogawa reported that he had to send them back, and asked "where do you want us to ship and how? Awaiting for your reply ASAP." (*Id.*)

### III. DISCUSSION

In diversity cases, "the federal court is bound by state law concerning amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by

the Due Process Clause of the Fourteenth Amendment." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985) (citation omitted). The Alabama long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993). Because Alabama courts interpret the Alabama long-arm statute to reach the limits of federal due process, applying the two-part analysis of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), is sufficient to determine the defendants' amenability to suit in Alabama. *See Morris v. SSE, Inc.*, 843 F.2d at 492 n.3.

The determination of whether a defendant is amenable to a forum's jurisdiction requires a two-part analysis. First, the defendant must purposefully establish sufficient "minimum contacts" with the forum state to satisfy due process requirements.[4] *Morris v. SSE, Inc.*, 843 F.2d at 492 (citing *International Shoe*, 326 U.S. at 316 (1945)). Unilateral action by the plaintiff or a third party does not satisfy the "minimum contacts" requirement. *Morris v. SSE, Inc.*, 843 F.2d at 492 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger*

---

[4] "The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consol. Def. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with that forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8. General jurisdiction is exercised over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Id.*, 466 U.S. at 414 n.9. Because there is no evidence of contacts sufficient to give rise to the court's exercise of general personal jurisdiction over any of the defendants, the court's analysis hereafter focuses solely on specific personal jurisdiction.

*King Corp v. Rudzewicz*, 471 U.S. 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. at 235). Second, the forum's exercise of personal jurisdiction over a defendant must comport with "traditional notions of fair play and substantial justice." *Morris v. SSE, Inc.*, 843 F.2d at 492 (citing *International Shoe*, 326 U. S. at 316).

In order to meet its burden, the plaintiff must produce sufficient evidence that the defendants purposefully established sufficient minimum contacts with the forum state to satisfy due process requirements. *See Morris*, 843 F.2d at 492. Defendant has sufficient "minimum contacts" if (1) the contacts relate to or give rise to the plaintiff's cause of action; (2) the contacts involve some purposeful availment of the privilege of conducting activities within the forum; and (3) the contacts within the forum state are such that the defendant should reasonably anticipate being haled into court there. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996). If the plaintiff meets this burden, the defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Because defendants did not purposefully avail themselves of the benefits of Alabama law and could not reasonably anticipate being haled into an Alabama court, they have not established sufficient minimum contacts with Alabama by which the court may exercise its jurisdiction over them. A contract between a nonresident and resident, standing alone, does not constitute the necessary purposeful availment. *See Burger King*, 471 U.S. at 478. Instead, to determine whether a party purposefully availed itself of a forum a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Neither the parties' pre-contract negotiations nor the future consequences of the business transaction are indicative of defendants' purposeful establishment of contacts to Alabama. Japan Optical owns no property in Alabama, and does not conduct or solicit business in Alabama. (Yukimura Aff. ¶ 2; Ogawa Aff. ¶ 2.) None of its officers or management employees have ever been to Alabama. (*Id.*) Neither Yukimura nor Ogawa has ever been to Alabama or conducted any business there. (Yukimura Aff. ¶ 3; Ogawa Aff. ¶ 3.) *See Burger King*, 471 U.S. at 477 (noting that defendant's physical presence within a state is pertinent to "minimum contacts" analysis).

Sims testified that since April 1999 Chaos's principal place of business has been in Alabama. (Sims Aff. ¶ 2.) However, the Chaos business card Lewis gave Japan Optical lists a California address. (Def.'s Brief, Ex. B.) The Lewis memorandum evidences that at least from October 1, 1999 to November 20, 1999, Chaos intended to maintain an office in California. (Def.'s Reply, Ex. 8.) In the December 9, 1999, filing with California's Secretary of State Sims avers that Chaos's principal executive office is in California. (Def.'s Brief, Ex. A.)

There is some evidence that during the negotiation phase of the transaction Chaos intended that the sunglasses be shipped to Alabama. Lewis testified that "it was clear in our negotiations with Japan Optical that . . . [the] sunglasses . . . would be shipped to Chaos somewhere in Alabama." (Lewis Aff. ¶ 5.) However, neither Lewis nor anyone else claims to have informed any agent of Japan Optical of this intent. Although the Chaos purchase order lists an Alabama address as Chaos's shipment address, the document is not signed by any agent of Japan Optical, and no one has testified that the purchase order was sent to or received by Japan Optical. (*See* Sims Aff. ¶ 7, and Ex. 1.) Japan Optical's Sales Order governing this transaction

9

signed by Sims, Chaos's CEO, lists a California business address for plaintiff and a California shipping address for the sunglasses at issue. (Def.'s Brief, Ex. C.) Plaintiff agreed to take possession of the sunglasses "F.O.B. Gardena, CA." (*Id.*) At the time of the sale and for several months afterwards, defendants reasonably believed plaintiff to be a California company and that these sunglasses were intended for shipment to California. That plaintiff ultimately rerouted the sunglasses to an Alabama warehouse and now asserts an Alabama principal place of business is insufficient to establish in personam jurisdiction over defendants. *See Banton Industries, Inc. v. Dimatic Die & Tool*, 801 F.2d 1283, 1284 (11th Cir. 1986) (holding that the shipment of allegedly defective goods to Alabama after the buyer had accepted the goods F.O.B. from an out-of-state supplier was insufficient to confer personal jurisdiction over supplier). Finally, the Lewis memorandum suggests that at least until November 20, 1999, Chaos intended to use warehouse space in California to store the sunglasses. (*See* Def.'s Reply, Ex. 8.) Therefore, the negotiations, contemplated future consequences, and terms of the initial contract lead to the conclusion that defendants have not purposefully availed themselves to the jurisdiction of courts in Alabama.

      Plaintiff contends that even if defendants' conduct prior to breaching the contract does not establish "minimum contacts" with Alabama, defendants' post-breach conduct does, because defendants made representations to agents of Chaos while those agents were in Alabama and eventually shipped sunglasses to Alabama. (Pl.'s Response at 5-9.) This argument is unpersuasive. The evidence indicates that Chaos did not decide to move operations to Alabama until months after it had contracted with Japan Optical to provide the sunglasses. Unilateral action by the plaintiff or a third party does not satisfy the "minimum contacts" requirement, *see*

*Morris v. SSE, Inc.*, 843 F.2d at 492, and Chaos's post-contract decision to move its operations to Alabama does not provide the minimum contacts necessary to subject Japan Optical to suit in Alabama. Because Japan Optical could not reasonably expect the Chaos transaction to result in its being haled before an Alabama court, sufficient contacts do not exist to subject Japan Optical to the court's jurisdiction.

## CONCLUSION

Because defendants have not established sufficient minimum contacts whereby this court's exercise of jurisdiction over them would be consistent with traditional notions of fair play and substantial justice, defendants' motion to dismiss for lack of personal jurisdiction is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 8th day of January, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge